UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SUSAN REYES | CIVIL ACTION |
| VERSUS | NO: 15-1085 |
| FRESENIUS MEDICAL CARE HOLDINGS, INC., ET AL. | SECTION: "A" (2) |

### ORDER

The following motion is before the Court: **Motion for Partial Dismissal (Rec. Doc. 8)** filed by defendant National Medical Care, Inc.[1] Plaintiff Susan Reyes opposes the motion. The motion, set for submission on July 1, 2015, is before the Court on the briefs without oral argument.

### I. BACKGROUND

Plaintiff Susan Reyes filed this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq., the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., the Louisiana Employment Discrimination Law, La. R.S. § 23:301, et seq., and La. C.C. art. 2315. She alleges that Defendant discriminated against her on the bases of gender, age, and disability. She also alleges that Defendant retaliated against her for protected actions and defamed her. Defendant filed the present motion on June 5, 2015. Plaintiff filed her opposition on June 23, 2015, contending that her amended complaint, filed that same day, cured any of the alleged defects. Defendant has since filed an answer to the amended complaint.

Plaintiff was hired by Defendant on April 26, 2013 as a director of market development for Defendant's "Heart Failure Program," which is related to Defendant's "UFComplete program." Her direct superior was Rich Fatzinger, the Senior Director of

---

[1] Defendant was initially incorrectly named as Fresenius Medical Care Holdings, Inc. and Fresenius Medical Care North America.

Market Development for the Heart Failure Program. Dr. John Wigneswaran, as vice president of the UFComplete Program, was a superior to both individuals.

Plaintiff claims that on or around February 10, 2014, Dr. Beth Davidson at Centennial Hospital in Nashville asked that Plaintiff give a presentation on Defendant's program at the hospital. Upon learning of this request, which was made after Plaintiff had given several presentations at multiple hospitals without complaint, Plaintiff claims that Fatzinger called Davidson and told her that Plaintiff was not competent to give this presentation. Plaintiff claims that no similarly situated male and younger employees were treated in this way and that she reported this complaint via Defendant's equal employment opportunity compliance hotline.

In a separate event, also in early February 2014, Plaintiff claims that Fatzinger sent inaccurate and misleading clinical and marketing information to a hospital in Arizona. Plaintiff sent an email to Fatzinger expressing her concern with the situation. Plaintiff sent another email to Fatzinger on which she copied Wigneswaran stating that the nurses at the Arizona hospital were upset with Fatzinger due to the inaccurate information.

Plaintiff states that on February 20, 2014, Fatzinger removed her from the Arizona hospital's account. She also claims that on February 21, 2014, Fatzinger placed her on a performance improvement plan ("PIP"). She argues that this was done to try to encourage an early resignation or to set up a later termination. She further contends that she had requested additional training since her hiring but that it was never provided.

Plaintiff argues that Defendant protected Fatzinger despite her discrimination complaints. Fatzinger hired Rob Pecario as a director of market development in the Heart Failure Program and assigned him approximately half of Plaintiff's "territory." Plaintiff claims that Pecario is younger than Plaintiff, and that Fatzinger referred to him as a "young stud."

Plaintiff states that Fatzinger took additional actions against her around June 18, 2014.  Plaintiff alleges that Fatzinger was promoting unapproved uses for one of their dialysis devices.  Plaintiff also alleges Fatzinger tried to hide the fact that non-sterile catheters were being used at one of Plaintiff's customer hospitals.  Plaintiff claims that she met with Wigneswaran to complain about Fatzinger's actions.  In July 2014, Wigneswaran removed Fatzinger from his management position.  Brett Cohen and Wigneswaran managed the relevant divisions, and Plaintiff contends that no complaints arose against her during this time.  In August 2014, Plaintiff provided slides to Wigneswaran showing that Fatzinger was using inaccurate information in presentations.

Plaintiff claims that on September 10, 2014 she was injured in a car accident while in the course of her employment and reported the incident to Fatzinger.  She argues that Fatzinger did nothing with this information, even though the injuries included a spinal injury that limited her ability to stand, walk, or sit for long periods; she did note that she could still perform the essential functions of her job.  Plaintiff claims that she sought extra time off for physical therapy and doctor visits.

Plaintiff also contends that on October 2014 a customer, Dr. Negoianu, was contacted to give a presentation at Our Lady of the Lake Hospital.  She claims that Fatzinger restricted Negoianu from presenting any studies other than ones suggested by Fatzinger.  Fatzinger further told Negoianu that Plaintiff was clinically incompetent and could not assist in the presentation.

Plaintiff alleges that all of her accounts were given to Pecario in December.  On December 7, 2014, Fatzinger resumed his previous management responsibilities.  On December 8, 2014, Plaintiff claims that Defendant allowed Fatzinger to terminate her employment.  She further claims that the reasons listed for her termination – under-performance and complaints from two doctors – were either untrue or unjustified.

Plaintiff contends that the reasons stated were pretext for the discriminatory and retaliatory acts of Defendant. She claims that she had the highest marketing results at that time; that her November numbers were among the highest of the team; that her December numbers were on track to match these. She also states that her termination came after a project at Our Lady of the Lake Hospital which Fatzinger described as "her best launch yet."

Plaintiff alleges that Defendant had a disciplinary and evaluation policy consisting of four steps – verbal warning, written warning with in-person meeting to establish clear expectations, an opportunity for the employee to present his case, and finally, termination. Plaintiff states that she was never "written up for any type of deficient performance or misconduct." As to the PIP, in addition to the prior noted allegations, Plaintiff claims that it was extended for an additional thirty (30) days although her performance did not differ from any of the other members of the team. She contends that Fatzinger included false complaints regarding her in the PIP. She also claims that at the end of the PIP, which Fatzinger allegedly admitted that she completed successfully in mid May 2014, she had better marketing results than anyone else on the team.

Via the instant motion, Defendant seeks to dismiss the claims that it discriminated against Plaintiff on the basis of gender, age, and disability. Defendant is not moving to dismiss the claims of retaliation or defamation.

## II.     STANDARD of REVIEW

In the context of a motion to dismiss the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (citing *Tellabs, Inc. v. Makor Issues & Rights*, Ltd., 551 U.S. 308 (2007); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Lovick v. Ritemoney, Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004)). However, the foregoing tenet is inapplicable to legal conclusions. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Thread-

bare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550, U.S. 544, 555 (2007)).

The central issue in a Rule 12(b)(6) motion to dismiss is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief. *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)). To avoid dismissal, a plaintiff must plead sufficient facts to "state a claim for relief that is plausible on its face." *Id.* (quoting *Iqbal*, 129 S. Ct. at 1949). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* (quoting *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). Legal conclusions must be supported by factual allegations. *Id.* (quoting *Iqbal*, 129 S. Ct. at 1950).

## III. DISCUSSION

The Court will analyze the claim below in two sections. Plaintiff and Defendant both address the gender and age discrimination claims together, and the Court will do the same. The Court will then separately address the disability claim.

### a. Gender and Age Discrimination

To establish a claim for discrimination based on gender and age, Plaintiff has the burden of establishing a prima facie case consisting of the following four elements: 1.) Plaintiff is a member of a protected class; 2.) Plaintiff was qualified for her position; 3.) Plaintiff was subject to an adverse employment action; and 4.) Plaintiff was replaced by someone outside of her protected class or treated less favorably than a similarly-situated

employee outside of her class.[2]  *Haire v. Bd. of Sup'rs of Louisiana State University*, 719 F.3d 356, 363-64 (5th Cir. 2013).  If Plaintiff successfully sets out a prima facie case, the burden then shifts to Defendant to offer a legitimate, non-discriminatory reason for the action.  *Id.* (citing *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 881 (5th Cir. 2003)).  If Defendant does offer such a reason, the burden then shifts back to Plaintiff to show that the proffered reason is a pretext for discrimination "by showing that a discriminatory motive more likely motivated her employer's decision, such as through evidence of disparate treatment, or that her employer's explanation is unworthy of credence."  *Id.* (explaining the *McDonnell Douglas* framework).[3]

      Defendant argues that several of the actions of which Plaintiff complained do not constitute "adverse employment" actions.  For example, Defendant points out that statements demeaning Plaintiff's competency or extending her PIP are not ultimate employment actions, such as hiring, firing, demoting, promoting, granting leave, and compensating.  *See Thompson*, 764 F.3d 500 (providing an extensive discussion of the range of actions included within the definition of an adverse employment action).  Although termination of Plaintiff's employment would be such an action, Defendant argues that Plaintiff has offered no factual support for her claims and that such conclusory statements are insufficient to state a claim.  Defendant also contends that Plaintiff failed to state any allegations that exhibit a discriminatory intent on its part for any actions taken.  Plaintiff responds only generally that the amended complaint has cured any prior defects.

      While Plaintiff's statements do come close to being little more than conclusory

---

[2] At the dismissal stage, the Court notes that a plaintiff is not required to plead specific facts under each element.  *See Thompson v. City of Waco*, 764 F.3d 500, 507-08 (5th Cir. 2014)(Smith, J., dissenting).

[3] Neither party presented nor separately analyzed the elements of such a claim.

allegations, the Court recognizes the relatively low threshold set by the "plausible" pleading standard on a Rule 12(b)(6) motion. The cases cited by Defendant are distinguishable. In *Williams v. U.S. Dept. of Agric.*, the plaintiffs brought a lawsuit against the U.S. Department of Agriculture and Guaranty Bank & Trust Co. alleging that the defendants took actions resulting in the denial of their disaster relief claims "out of racial animosity." No. 10-0610, 2011 WL 1239890 (M.D. La. March 30, 2011). That court found that the plaintiffs "have simply not pled any facts which lead to the plausible conclusion that Defendant acted out of racial animus towards Plaintiffs." *Id.* In *Prewitt v. Continental Auto.*, the plaintiff brought numerous claims against his former employer, including claims based on discrimination and retaliation. 927 F. Supp. 2d 435, 452-55 (W.D. Tx. 2013). The defendant moved for partial dismissal on, among others, the claim based on racial discrimination. *Id.* The majority of the plaintiff's allegations focused on actions taken after he had filed a sexual harassment claim and a sexual harassment claim was filed against him. *Id.* at 453-54. He did not allege that anyone similarly-situated was treated more favorably, that anyone in a supervisor role made any statements suggestive of bias, or that the manager who fired him was outside the protected class; to the contrary, the plaintiff stated that he had multiple unexcused absences and was terminated after his most recent of these unexcused absences. *Id.* at 454. Finding that the plaintiff made only conclusory statements that his termination was due to race, that court dismissed the claim without prejudice and allowed the plaintiff the opportunity to amend his complaint. *Id.* at 454-55.

In short, in the cases cited by Defendant, the plaintiffs had failed to provide any direct or circumstantial evidence of any discriminatory intent. Plaintiff in this case, a female who at the time of the incident was forty-nine years old, was terminated by her male manager. She stated that she was terminated despite a lack of warnings in derogation of company policy, successful completion of her PIP, and equal or better job performance than anyone

else on her team.  Plaintiff also alleged that the same manager referred to a more recent hire to the team, a younger male, as "a young stud."  The manager made this statement while assigning part of Plaintiff's "territory" to the allegedly younger male.  Thus, while it certainly could have been more explicit, Plaintiff has stated that she was treated differently than others similarly-situated outside of her protected class when Defendant terminated her employment despite the factors listed previously.  Furthermore, the timelines related to the separate allegations are not yet clear.  For example, the proximity between the manager's alleged statements and Plaintiff's termination might be instructive in determining motivation, but the current allegations do not speak to that issue.  Finally, unlike in *Prewitt*, Plaintiff has argued that any stated reasons for her termination, such as under-performance or complaints by other doctors, are either unfair, due to retaliation, or "unworthy of credence" as Plaintiff had received no written warnings and had strong performance numbers at that time.

    While Plaintiff might have a difficult time maintaining these claims through the summary judgment stage of the proceedings, the Court will not dismiss them at this time.

    **b.  Disability Claim**

    Although Plaintiff does not clarify in its pleadings, the Court assumes that the claim for disability discrimination is alleged under Title I of the ADA, 42 U.S.C. § 12101, et seq.  To establish a claim under that section, Plaintiff must allege the following: 1.) Plaintiff has a disability within the meaning of the ADA; 2.) Plaintiff was qualified for her position; and 3.) Plaintiff was discriminated against because of her disability.  *Ladwig v. Bd. of Sup'rs of Louisiana State University*, 842 F. Supp. 2d 1003, 1007 (M.D. La. 2012)(citing *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007)).  A disability under this statute can be found where an individual has a physical or mental impairment that substantially limits one or more major life activities, a record of such an impairment, or is regarded as having such

an impairment. § 12102(1).

As to her injury, Plaintiff stated the following: "Reyes had a car accident on September 10, 2014 while on company business and reported to Fatzinger." Plaintiff also alleges that "Reyes['] serious injur[i]es included a spinal injury which substantially limited her ability to stand, walk and sit for long periods; however, at all times Reyes could perform the essential functions of her job."

Plaintiff has failed to allege an impairment that substantially limits one or more major life activities. In *Dupre v. Charter Behavioral Health Sys. of Lafayette, Inc.*, the Fifth Circuit affirmed summary judgment against the plaintiff in part on a finding that the plaintiff failed to allege a disability on the basis that "her limitations in sitting require her to get up every hour and walk around, and her limitations in standing require that for every hour that she stands, she must walk or sit for a while." 242 F.3d 610, 614 (5th Cir. 2001). Plaintiff's allegations in this case do not even match the hardships cited in *Dupre*; they only vaguely allege that she could not do any one activity for a long period of time. Plaintiff has also failed to state any factual allegations regarding how Defendant might have "regarded Plaintiff as having such an impairment." § 12102(1)(C). Plaintiff states that she reported the incident to Fatzinger, but she does not mention that she ever even reported any injuries to Fatzinger or to the Defendant. Plaintiff remarks that she could perform all essential functions of her job. Plaintiff's only other mention of disability-related allegations is that "she sought the accommodation of time off for physical therapy and doctor visits." However, this statement comes a few pages after the mention of the incident and is given no context in terms of timing, the situation, to whom she reported, any acknowledgment of or response to the request, or any other detail. This is insufficient to state a claim under the ADA. *See, e.g., Sherman v. Dallas ISD*, no. 3:10-cv-1146, 2011 WL 477500 (N.D. Tx. Jan. 24, 2011) (finding that even a denial of a request for light duty preceding termination of employment is not

sufficient to show that one is disabled or regarded as disabled).  Any claim arising under state law related to discrimination on the basis of disability is dismissed for the same reasons.  *See Tribble v. Ouachita Parish Police Jury*, 939 F. Supp. 2d 626, 629-30 (W.D. La. 2013)("The Fifth Circuit has held that claims brought under LEDL are analyzed using the same framework and precedent as the ADA claims, leading to the same result."); *Lee v. Constar, Inc.*, 921 So.2d 1240, 1246 (La. App. 5 Cir. 2006)("Louisiana courts look to federal jurisprudence to interpret Louisiana discrimination laws as they are derived in part from the federal law.")(citations omitted).

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion for Partial Dismissal (Rec. Doc. 8)** filed by defendant National Medical Care, Inc. is **GRANTED IN PART AND DENIED IN PART**. It is **GRANTED** as to the claims alleging discrimination on the basis of disability brought under the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., and related state law.  It is **DENIED** as to the claims alleging discrimination on the basis of age and gender.

**IT IS FURTHER ORDERED** that the **Motion for Leave to File a Sur-Reply to Defendant's Reply Memorandum (Rec. Doc. 20)** filed by Plaintiff is **GRANTED**.

August 12, 2015

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE